Theresa Siekmann, Appellant, v. Roy F. Stanton and Mrs. Roy Stanton, Known as Grace Stanton, Appellees.*

---

\* The court has directed that this opinion which was formerly ordered to be published in abstract form (249 Ill. App. 663) be reported in full.

Opinion filed June 1, 1928.   Rehearing denied July 28, 1928.

R. D. W. HOLDER, for appellant.

McGLYNN & McGLYNN, for appellees.

MR. JUSTICE NEWHALL delivered the opinion of the court.

This is a suit in chancery to foreclose a mortgage executed by appellee, Roy F. Stanton, on July 26, 1906, to secure his note for $5,000, as part of the purchase price for the premises in question bought from appellant. The note was given for three years, with interest at 6 per cent, payable semiannually. The bill alleged that the whole of the principal sum, with interest from January 26, 1922, was due and unpaid.

Appellee's answer admitted the execution of the note and mortgage, and that the same was given to secure a part of the purchase money for the premises; that the note and mortgage were made to Henry T. Renshaw, as trustee, but that the same were assigned and delivered to appellant on the day of their execution; that the note was paid by delivery to Renshaw, as agent, of the full amount of the principal of $5,000 and interest of $100 on May 26, 1919; that the same had been paid to Renshaw, the trustee, from time to time, both principal and interest, at the direction and with the knowledge and consent of appellant.

Replication was filed by appellant denying that she authorized and instructed Stanton to pay to Renshaw, or that he had any authority to receive said money for her.

The cause was referred to the master to take proofs and to report his findings of facts and law. The master reported, recommending a decree for appellant. Exceptions were filed by both parties to the master's

report. Before the hearing of the exceptions, the appellees filed an amendment to their answer, alleging that appellees paid the interest, from time to time as it became due, to Renshaw, and on the 26th day of May, 1919, Stanton paid the principal sum of $5,000 and accrued interest to that date to Renshaw.

The chancellor overruled the exceptions of appellant and sustained the exceptions of appellee to the master's report, and entered a decree dismissing the bill for want of equity.

The master in his report found and reported, in part, as follows:

"The issue in this case is whether complainant is to be charged with the payment made by Dr. Stanton to Mrs. Siekmann. It is contended on behalf of defendants (appellees) that Dr. Stanton was expressly authorized by Mrs. Siekmann to make payments to Henry T. Renshaw as her agent. Dr. Stanton testified that when the transaction was had in 1906 he told Mrs. Siekmann that he wanted to pay off the principal at the rate of one thousand ($1,000.00) dollars per year, more or less and she told him this would be satisfactory, and that he could make payments when he was ready and that such payments could be made to Henry T. Renshaw and that he would not need to see Mrs. Siekmann about such payments.

"The Master finds as a matter of fact that said conversation did occur as stated by Dr. Stanton and that he did make an arrangement at that time when the mortgage was given in 1906, whereby he could make payments of one thousand ($1,000.00) dollars per year. He made no such payments, however, and the mortgage was continued in effect without any formal renewals thereof. In 1919 when he decided to pay off the indebtedness he did not rely upon the agreement with Mrs. Siekmann concerning the partial payments but relied upon Renshaw getting the papers for release. . . . .

"The Master therefore finds that the material allegations of the bill of complaint are substantially proven and true and recommends that a decree for foreclosure be entered in accordance with the prayer thereof."

Appellant objected and excepted to the finding of fact on the part of the master that said conversation did occur as stated by Dr. Stanton, and that he did make an arrangement, when the mortgage was given in 1906, whereby he could make payments of $1,000 per year.

The trial court overruled appellant's exceptions, and sustained those of appellee, and found, by its decree, that the note secured by said mortgage was fully paid and discharged by appellee Stanton; that the same was paid to the trustee therein named, Henry T. Renshaw, at the direction and with the knowledge and consent of appellant, who had, prior thereto, instructed and authorized Stanton to pay to the trustee, Renshaw, the interest due on said note, and any part or the whole of the principal remaining unpaid whenever Stanton was in a position to pay the same or any portion thereof, or at any time Stanton felt like so doing, and that, pursuant to such instructions and authorization from appellant, Stanton did pay to Renshaw, trustee, the interest on said principal indebtedness from time to time until the 26th day of May, 1919, when he paid to Renshaw, trustee, the principal sum of $5,000, then remaining due and unpaid, and the sum of $100 to cover interest due thereon at the time of such payment, whereby the whole indebtedness and the interest thereon were fully and finally discharged.

Appellant contends that the finding and decree of the trial court are not warranted by the competent evidence in the record.

Dr. Roy F. Stanton, appellee, testified that on July 25, 1906, he went to the home of appellant and bargained with her for the purchase of the premises

in question for the sum of $6,000; that they agreed to meet the following day at Renshaw's real estate office, in East St. Louis, to draw the papers for the transfers, whereby he was to pay down $1,000, take a deed of the property, and give back a mortgage for $5,000, due in three years, with interest at 6 per cent, payable semi-annually. After the deed, note, and mortgage were made, he told appellant that he wanted to pay off the mortgage at the rate of $1,000 a year, more or less, reducing it as fast as he could; that appellant said that would be perfectly satisfactory, and that he could pay this at any interest paying date, or any time he was ready, but to pay it to Renshaw, and that he need not come to see appellant about it; that he paid the interest in January and July of each year; that he paid Renshaw on the 26th day of May, 1919, $5,100, being the principal of $5,000 and $100 interest from January to May; that he gave three checks aggregating $5,100, payable to J. W. Renshaw's Sons, which checks were indorsed by Renshaw, and charged against appellee's bank account; that he received a receipt from Renshaw for the payment, which receipt recited that it was in full for the mortgage, dated July 26, 1906, and was signed by J. W. Renshaw's Sons, Agents, with the initials of Henry T. Renshaw.

Counsel for appellee admitted at the hearing before the master that Renshaw received the money and did not pay it over to appellant. Appellee Stanton further testified that he never had any conversation with Renshaw about extending the mortgage loan. On cross-examination, Stanton testified that he received by mail his deed from the recorder; that he knew that the note and mortgage belonged to appellant; that just prior to paying the loan to Renshaw, he called at his office and told him he could pay the note and mortgage any time it was ready, and Renshaw dared him to do it, to which appellee replied, "All right, you get the papers

and I will fix it up''; that, when he paid the $5,100, he got what he understood to be the papers—that is, the original note and mortgage with appellee's signature written thereon as good as the witness could write it, together with what purported to be the certificate of the recorder, reciting that the note and mortgage had been canceled and paid.

The doctor did not have these papers at the time of testifying, but claimed that the same had been burned in what he called a "winding up" process of burning old papers that were of no further use; that he had never looked for these papers until after Renshaw's failure in 1922, when he was called upon by appellant's son and her attorney to make payment of the note; that he knew he ought to have the note and mortgage when he paid it, and supposed that he did have the original note and mortgage.

John O. Watson, brother-in-law of Dr. Stanton, testified for him that he was present in the office of Renshaw and overheard a part of the conversation between the parties at the time of the making of note and mortgage in 1906, and heard appellant tell the doctor that he could pay any part of the principal any time he got ready and could pay it there to Mr. Renshaw, for he was her agent, but, on cross-examination, he testified he was not sure that appellant was present, and that what he heard was to the effect that the doctor said he would be able to pay $1,000 a year, and that appellant replied that she would take partial payments of $1,000, and that the doctor could pay it off in that way.

Henry T. Renshaw testified for appellee, by deposition taken at Menard, Illinois, where he was confined in the penitentiary, that he was formerly engaged in the real estate and insurance business in East St. Loius for about 25 years; that appellant and Dr. Stanton came to his office on July 26, 1906, for the purpose of having a deed, note, and mortgage executed pursuant

to a previous arrangement made without his knowledge; that he had nothing to do with the negotiations for the purchase or sale; that they told him that the purchase price of the property was $6,000; that $1,000 was to be paid down and the balance secured by a mortgage; that the doctor said he would pay $1,000 a year and appellant said that was agreeable to her, and that the payments were to be made to him at his office; that the doctor did pay $5,100 in one payment in 1919; that prior thereto he paid the interest every 6 months, which was delivered either to appellant or her son; that the note and mortgage were made out in his name, as trustee; that he immediately assigned same to appellant, and delivered the note to appellant, and then sent the deed and mortgage to be recorded, and that, after recording, the mortgage was delivered to appellant and the deed to Dr. Stanton; that he knew both Dr. Stanton and appellant prior to 1906, but had never, prior thereto, had any business transactions with either; that after 1906 the doctor paid him the semiannual interest, which he always delivered either to appellant or her son; that, after the payment of the $5,100, he credited the same on his books to appellant, but never paid her the money or advised her that it had been paid; that he continued to make semiannual interest payments to appellant until he failed in 1922; that after 1906 he collected some rents for appellant and also interest on several of her loans; that Dr. Stanton never made any partial payments of $1,000 on the principal of the loan, but that the only payment on the principal was the full amount of $5,000 made in May, 1919; that, when the loan matured in 1909, Dr. Stanton came to his office, paid the interest, and wanted to know if he could renew it, because he was not ready to pay it off, and asked him if he would see appellant; that he did ask appellant to let the loan stand, and she said, "Yes," to just carry it along, and they agreed to let

it run until the doctor was ready to pay it; that he talked with the son of appellant to see if it was agreeable to let the loan stand, and that thereafter the interest was paid by the doctor up until May, 1919, and that he either gave the interest to appellant or to her son, who generally collected the interest at his office.

Appellant testified that she was 69 years old, and resided near East St. Louis; that she has had the possession of the note and mortgage in question since the date of their execution; that she kept them in her box at the bank; that Renshaw never had possession after they were signed at his office; that she does not read or write English, and that Casper Siekmann, her son, attended to her business affairs; that he kept her accounts and took charge of payments made to her. Appellant denied that she ever told appellee that Renshaw transacted her business; that, at the time of the sale of her property, she wanted to go to Belleville to have her attorney make out the papers, but that the doctor did not want to take the time, and suggested going to some office at East St. Louis; that they finally agreed to meet at Renshaw's office to close the deal; that $1,000 was paid at Renshaw's office to her, and that Renshaw made out the note and mortgage for the balance of the purchase price; that she received the note on the day the deed was signed, and within a few days the mortgage, after recording, was mailed to her; that nothing was ever said about the making of partial payments of $1,000 on the mortgage, and she denies that she ever authorized appellee to make payments on the principal to Renshaw, or that he was ever her agent, or had ever transacted any business for her prior to 1906; that she received her interest on the loan regularly from Renshaw; that she had never seen Dr. Stanton from the time of making the sale in 1906 until the trial of this case; that her son attended to the matter of collecting the interest.

Casper Siekmann, son of appellant, testified in her behalf that he was present when Dr. Stanton made the deal for the purchase of his mother's house; that, after the deal was closed at Renshaw's office, his mother gave him the note and mortgage to put in her box at the bank; that he received the interest from Renshaw for his mother, and, when the note matured, Renshaw asked him if his mother would extend the loan, and he told Renshaw that it would be all right if Dr. Stanton paid the interest; that Renshaw paid the interest regularly until 1922; that in August, 1922, after Renshaw had failed in business, he went to see Stanton about the loan, and Stanton told him over the telephone that it would have been much better if he had paid appellant direct, which conversation was denied by the doctor; that he went with his mother's attorney, Mr. Turner, to see Dr. Stanton on August 16, 1922, and heard the conversation between Turner and Dr. Stanton.

L. D. Turner, witness for appellant, testified that he was employed by appellant to collect the loan in question, and that he went with Casper Siekmann on August 16, 1922, to Dr. Stanton's office to demand payment of the note, and the doctor replied that he had paid it to Renshaw, and that he searched his papers for the purpose of finding the note and mortgage, which he claimed had been delivered to him at the time of payment, but was unable to find them, and later said they had been burned.

In order to bind the holder of a promissory note by a payment of the principal thereof to one other than the holder, it must appear that the person receiving the payment had either possession of the note or express or implied authority from the holder to receive such payment; and the payor is chargeable with the duty of seeing that the person to whom he makes payment thereof has authority from the holder to receive such payment, if such person has not the note in his possession. (*Griffin v. Halbert,* 196 Ill. App. 601, 603; *For-*

*tun3 v. Stockton,* 182 Ill. 454; *Stiger v. Bent,* 111 Ill. 328; *Lochenmeyer v. Fogarty,* 112 Ill. 572; 2 C. J. 626, § 263.)

The fact that an agent is authorized to receive instalments of interest as they become due on a note or other obligation does not give him implied power to collect the principal. (2 C. J. 621.)

The proof in the record is that Renshaw never had possession of the note and mortgage after the making and delivery thereof in 1906, and appellee does not rely upon the fact that he was deceived by Renshaw when payment of the principal was made to him, and there was delivered to him a spurious note and mortgage, which had been executed by Renshaw without appellant's knowledge. The sole claim made by appellee is that Renshaw had special authority to collect in this particular instance, because of the conversation that he had with appellant in 1906, at the time of the delivery of the note and mortgage.

If it be true that the conversation did occur, as related by Dr. Stanton as to this alleged special authority to pay Renshaw, the real question then to be decided is whether or not, under all the circumstances, it was broad enough to warrant the payment of the entire principal in *one payment,* 10 years after the maturity of the note, to one who did not have the note or mortgage in his possession.

In 2 C. J. 555, it is said: "It is a cardinal rule of agency that every grant of authority should, if possible, be so construed as to give effect to the intention of the principal in creating the agency," and, in support of the text is cited the case of *Halladay v. Underwood,* 90 Ill. App. 130, where it is said: "Every authority of an agent must find its ultimate source in some act or word of the principal, indicative of his intention, and where the authority is sought to be implied from the words or conduct of the principal, its extent can not exceed the necessary and legitimate effect of the words

and conduct relied upon. The extent of the agency can not be assumed because of convenience; it must exist in the intention of the principal, either express or implied.''

In the *Halladay* case, it was sought to justify the prepayment to a general agent of the lessee of rent for a year under a lease calling for it in monthly instalments, and it was conceded that bare authority given by the lessee to his agent to collect rent from month to month, as it fell due under the lease, would not suffice to authorize him to receive in advance a part of the year's rent and acquit for the whole. It was further held that the circumstances of a prepayment of rent for a year, under a lease calling for it in monthly instalments was an unusual one—one which the lessors, as business men, might well have hesitated to do in the absence of knowledge of certain authority on the part of the agent, and was so extraordinary in character as to put the lessor upon inquiry as to the extent of the agent's authority.

In the case at bar the special authority to collect, taking appellee's version as being true, was limited to *partial payments* of $1,000 on the principal, and could not be construed to warrant the payment of the *entire principal* 10 years after the maturity of the note.

Upon the maturity of the note, the evidence shows that, pursuant to the consent of appellant, the mortgage indebtedness was permitted to stand, subject only to the understanding and agreement that the interest would be paid regularly. It can well be said that, under this arrangement for extension, the previous authority, if given, to make partial payments of the principal, was revoked *or abandoned* by the parties, and would require a new authority from the principal, in order to justify the payment of the entire principal without the production of the original note or mortgage.

Appellee, when he made his payment of the entire principal to the agent, asked the agent Renshaw to get the note and'mortgage, which would indicate that he was paying to the agent upon the basis that he had possession of the note and mortgage, and was not relying upon the alleged limited authority given to the agent 13 years before the date of payment. Appellee knew that appellant was the owner of the note and mortgage in question, and made no inquiry of her to determine whether or not it was proper to pay to the agent, but relied upon the apparent genuineness of the papers, which Renshaw delivered to appellee. Appellee was not only guilty of negligence in that respect, but, under all the circumstances, taking into consideration the fact that the loan had been renewed from time to time for over a period of 10 years after maturity, he was not warranted in assuming that the agent was acting within the apparent scope of his authority to collect the entire principal in one payment. When an agency is special the authority must be strictly pursued, and the principal is not bound, if the agent exceeds it. (*Fortune v. Stockton,* 182 Ill. 454; *Blackmer v. Summit Coal & Mining Co.,* 187 Ill. 32; 2 C. J. 562, § 204.)

We are of the opinion that the competent evidence in the record does not sustain the finding and decree of the circuit court, and, accordingly, the decree of the circuit court is hereby reversed and the cause remanded to the circuit court, with directions to enter a decree in favor of appellant in accordance with the findings and recommendations set forth in the report of the master in chancery, bearing date June 30, 1927, on file in said cause.

*Reversed and remanded with directions.*