Commercial Credit Company, Appellee, v. Walter Maxey, Trading as Maxey Service Station, Appellant.

Gen. No. 9,105.

Opinion filed February 8, 1937.

Rehearing denied March 24, 1937.

FRANK E. MAYNARD, of Rockford, for appellant.

WELSH and WELSH, of Rockford, for appellee; R. T. WELSH, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.
The Commercial Credit Company filed its complaint in the circuit court of Winnebago county, in which it alleged that on April 19, 1935, Walter Maxey purchased from Noeske Brothers of Freeport a Plymouth automobile for $617.60 of which amount he paid in cash $117.60 and executed his note and conditional sales contract for the balance of $500, due July 19, 1935; that thereafter, for a valuable consideration, the plaintiff became the owner of said note and contract and is now the owner thereof, and avers that the defendant has failed to pay said note or to surrender possession of the automobile and prays judgment for the immediate possession of the car and for damages for the wrongful detention thereof. The answer of the defendant admitted the execution of the note and conditional sales contract but avers that the same, with all accrued interest thereon, has been paid; that the defendant is not and was not indebted to the plaintiff and that he has possession of the note. The defendant also filed a counterclaim, in which he alleged that he purchased the automobile in question and paid a part of the purchase price in cash and the balance by ex-

ecuting, on April 19, 1935, his note and conditional sales contract for $500; that he paid said note and the plaintiff surrendered and delivered the same to him, but notwithstanding its payment, the plaintiff, so the counterclaim avers, wrongfully took the automobile from him on August 6, 1935, and he has been deprived of its use and has been compelled to hire an attorney to defend this suit and has thereby been damaged in the sum of $500 and prays judgment for that amount. The plaintiff answered this counterclaim denying the payment and surrender of the note. Subsequently the plaintiff amended his complaint by averring that the defendant has possession of said note and received possession of the same on or about May 7, 1936, by mistake. Thereafter the issues made by the pleadings were submitted to a jury for determination and at the conclusion of all the evidence, the jury, in obedience to a peremptory instruction, returned a verdict finding the issues for, and the right of possession of the automobile in, the plaintiff. Upon this verdict judgment was rendered and this appeal is prosecuted by the defendant to reverse that judgment.

The evidence discloses that on April 17, 1935, Noeske Brothers, automobile dealers in Freeport, Illinois, purchased of appellee six automobiles, including the Plymouth car in question in this case, the consideration therefor being $3,509.30. Noeske Brothers executed their conditional sales contract therefor, which was in the customary form known as the ''floor plan'' and by its terms appellee reserved title until the cars therein described were sold. By the terms of this contract Noeske Brothers had the right to display the cars for sale purposes only and the balance due appellee on the car in question from Noeske Brothers to the plaintiff was stated to be $577.60. On April 19, 1935, appellant, Maxey, was in Freeport and Noeske Brothers sold the car in question to him. At that time appel-

lant was engaged in selling Plymouth and De Soto automobiles at Polo, Illinois and was doing business as Maxey Service Station. In payment therefor, appellant executed and Noeske Brothers received from him two instruments, one a conditional sales contract and the other a note. Both were dated April 19, 1935, and the note was for the sum of $500 and payable to Noeske Brothers at the office of the appellee at Milwaukee, Wisconsin, and was due July 19, 1935. Maxey received the car on the same day, April 19, 1935, and Noeske Brothers indorsed both the note and sales contract to appellee and sent them to appellee at Milwaukee. The conditional sales agreement was signed ''Maxey Service Station by Walter Maxey'' and by ''Noeske Brothers by Charles E. Noeske'' and it and the note were received by appellee at its Milwaukee office.

The evidence on behalf of appellee discloses that the transaction of appellee with Noeske Brothers was set up on the records of appellee in its Milwaukee office and when the conditional sale contract of appellant was received at appellee's office in Milwaukee it was placed in the same file under Noeske Brothers' name and the note was forwarded by the Milwaukee office of appellee to its Baltimore office. On April 24, 1935, Noeske Brothers sent its four checks to appellee at its Milwaukee office, among them being one check for $577.60. Accompanying these checks was a letter stating that the several checks were in payment of the amount due on four of the cars covered by their contract, one of which is the car in question in this case. This check was for the correct amount but a clerk in appellee's office, finding appellant's contract in the file, which disclosed that $500 was due thereon, placed the excess of $77.60 to the credit of Noeske Brothers in the Reserve Adjustment Account and appellee's office in Milwaukee wrote to its Baltimore office re-

questing that appellant's note of $500 be sent to the Milwaukee office which was done and upon its receipt on or about May 4, 1935, it was stamped paid and mailed to appellant at Polo, Illinois.

Appellant testified that he never received the note by mail but that on July 9, 1935, two strangers drove into his service station in a black Ford V-8 and one of them got out, told appellant his name and said he was from the financial department of the Commercial Credit Company and had come to get appellant to sign up new financial statements and receipt what payment he wanted to make on his note; that he, appellant, then told the men that he would pay it all if they had the note with them, and on the following day about 10:30 in the morning the same men returned in the same car, one man got out of the car, had a brief case with him and from the brief case took out a wallet and from the wallet took the note, which was at that time stamped paid. Appellant was handed the note, examined it, satisfied himself that it was his note and gave to the stranger six $50 bills and ten $20 bills which he had carried since early morning in an envelope between his undershirt and shirt and retained the note. Appellant further testified that the man to whom he paid the $500 was 35 or 40 years of age, about five feet eleven inches or six feet tall, fairly heavy, weighing about 180 pounds, black hair, broad face, brown eyes, wearing amber tortoise rim glasses, a sailor straw hat and a summer cream color woolen suit carrying a dark tan brief case in his hand. Appellant did not recall his name, had never seen him previous to the evening before, had never seen him since, did not inquire where he lived, knew the car had an Illinois license plate but did not remember the number, did not ask for any credentials, saw none, did not see or receive his conditional sales contract and made no

inquiry to ascertain whether Noeske Brothers, the indorsers on the note, had paid it or not.

The evidence further discloses that the district representative of appellee went to appellant's service station on August 6, 1935, and advised appellant of the error in mailing to him the note from appellee's Milwaukee office and told him that he was there to collect the $500 or repossess the car; that appellant said he had the note and had paid it, would not pay it again and would not give the car up; that shortly thereafter appellee's representative found the car unlocked in front of appellant's home and drove it to Rockford and placed it in the garage of the Craig Motor Company. The abstract furnished by appellant does not disclose when the complaint was filed but the additional abstract discloses the return on the writ of replevin and it is dated August 6, 1935, and is to the effect that appellant was duly served on that day and that the writ of replevin was executed that day by the sheriff by replevying the automobile in question.

Counsel for appellant contend that the record in this case presents for determination a moot question only; that replevin is a possessory action and that one of the essential elements of a replevin suit is that the property sought to be replevied must be in the actual or constructive possession of the defendant at the time the suit is started; that the evidence discloses that prior to bringing this action the plaintiff took the automobile in question under the provisions of its conditional sales contract and then, while in possession of it, instituted this suit. We do not think, upon this record, appellant is in any position to raise this question. While it does appear that the representative of appellee found the car unlocked in front of appellant's home and drove it to Rockford, it does not appear that it was not turned over to the representative of appellee at this place by the sheriff after the service of the

writ. Furthermore, this question was not, so far as the record discloses, presented to the trial court. Appellant answered the complaint, went to trial upon the issues made by the pleadings and should not be permitted to question in this court for the first time the return of the sheriff upon the writ of replevin.

It is next insisted by counsel for appellant that the evidence presented a question of fact for the jury to pass upon and that the trial court erred in directing a verdict, at the close of all the evidence, for appellee. The defense interposed by appellant was that he, as maker of the note involved herein, in good faith paid the same before maturity to one who was in possession thereof and his counsel insists that the law will protect him in so doing; that when it is shown that a person has possession of a negotiable instrument, his authority to collect the same will be implied. In support of his contention, counsel cite *Siekmann v. Stanton,* 251 Ill. App. 442; *Michaelson v. Doonan,* 259 Ill. App. 337; *Cassem v. Heustis,* 201 Ill. 208; *Short v. Weisenborn,* 193 Ill. App. 183, and several other cases. The *Siekmann* case, *supra,* was a proceeding to foreclose a mortgage executed July 26, 1906, which was given to secure a note of $5,000 due three years after date. The defense interposed was that on May 26, 1919, the mortgagor and maker of the note paid the principal and interest then due to Henry T. Renshaw, at the direction and with the knowledge and consent of the holder of the note and mortgage. The evidence disclosed that the makers did pay Renshaw, but Renshaw never paid it to Mrs. Siekmann and that Renshaw never had possession of the note and mortgage at the time the payment was made or after the making and delivery thereof in 1906. The court, after reviewing the facts, held that the maker was not only guilty of negligence in making the payment to Renshaw, but was not warranted in assuming that he was acting

within the apparent scope of his authority to collect the entire principal in one payment. The holding in this case does not, in our opinion, support appellant's contention that a maker of a note not due may rightfully pay the same to anyone who may have possession of the note. *Michaelson v. Doonan, supra,* and the other cases cited by counsel for appellant, announce the general rule to be that when a note is found in the possession of the maker, the presumption of payment arises because ordinarily the owner of a note retains it until it is paid so where it is found in the possession of the maker after it is due, the presumption is that the owner has been paid and upon being paid surrendered the evidence of his indebtedness. A presumption is an inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation and coincidence of facts and circumstances with each other, 22 C. J. 82, and this presumption that a debt has been discharged because the instrument evidencing the indebtedness is in the possession of the maker is a presumption of fact and like other presumptions of fact may be rebutted by evidence and when so rebutted the presumption disappears. In *Crocker v. Thompson,* 3 Metc. (Mass.) 224, Chief Justice Shaw said: ''In general it may be admitted that the production, by the mortgagor or those claiming under him, of a note secured by mortgage, will raise a presumption in the absence of all other proof, that it has been paid. But this is a presumption of fact, not of law, and it will be rebutted by any other evidence. If the possession and production of the note can be satisfactorily accounted for, upon any other hypothesis than that of payment of it to the holder, it will rebut such presumption.'' In *Sutphen v. Cushman,* 35 Ill. 186 the court said: ''Ordinarily a note found in the hands of the maker will, from that circumstance, be presumed to have been paid, for the reason that the surrender of a note to the

maker is usually consequent upon, or coincident with, its payment: but, if other circumstances are proved which are inconsistent with that hypothesis, the presumption is at once rebutted.''

In *Teeter v. Poe,* 48 Ill. App. 158, the court said that unexplained possession of a promissory note constitutes prima facie evidence of its payment, but where the evidence shows the circumstances, manner and means of obtaining it, the presumption or inference of payment must come from them and not from the mere fact of possession and if these show it was wrongfully delivered by a party to whom the payee had intrusted it for another and different purpose, such possession is no evidence of payment. The author of the article on Bills and Notes in 8 C. J. 1014, par. 1319, says that payment of a note will be presumed from possession, after maturity, by the maker but payment will not be inferred from possession by the maker before maturity.

The evidence of appellant is that he paid this note and received possession thereof July 10, 1935. He knew it belonged to appellee. He relied upon the statements of the person who had it in his possession and upon the fact that such person had possession of his unmatured note. Appellant testified he would have paid it to any one in whose possession the note may have been at the time he paid it. This note, which appellant testified he examined on July 10th, 1935, prior to paying $500 therefor, was an ordinary judgment note, and, omitting the warrant of attorney therein, appeared as follows:

No. 450–3322

''P-A-I-D          Polo, Illinois Date April 9th, 1935
.........1935

''Commercial Credit Co., Inc.

Per .........

''Ninety days after date, for value received, I, we, jointly and severally promise to pay to the order of

Noeske Bros. Five hundred dollars ($500.00) At the office of Commercial Credit office at Milwaukee, Wis. with interest after maturity at the highest legal contract rate.

> "Signed   Maxey Service Station (Seal)
> Buyer
> Walter  Maxey          (Seal)"

On the reverse side appears:

> "Without Recourse
> "For value received, pay to the order of
> Commercial Credit Company
> Signed: Noeske Bros. (Seal)
> Dealer
> By Chas. E. Noeske (Seal)"

The uncontradicted evidence is that the party who had possession of this note at this time and from whom appellant received it was not the agent or representative of appellee and his possession of the note was wrongful and appellee never received the money so paid by appellant or any part thereof.

"Where a note is payable to the order of a person, payment to a person holding the same without indorsement, and who is not the owner or agent of the owner is insufficient." 8 C. J. 603, sec. 839. Where, however, a note is payable to bearer or is indorsed in blank, its actual possession is prima facie evidence of the possessor's authority to receive payment thereon and the note will be discharged by payment to him in good faith unless the maker has notice to the contrary, and hence payment to a thief or to a finder of such a note in its actual possession is binding. 8 C. J. 602, sec. 838. The maker of a note has no right to pay the same before maturity without the consent of the holder, although, of course, such payment is valid as between the parties. 8 C. J. 603, sec. 840. In *Lochenmeyer v. Fogarty*, 112 Ill. 572, it was held that the maker of a note is not discharged when he pays a

note payable to a guardian after the death of the guardian, it appearing that the payment was made to the attorney for the guardian with whom the note had been left for safekeeping. In the course of its opinion the court said: "It is a plain proposition if the notes had been paid to a person authorized to receive payment, the indebtedness would have been extinguished. It is also equally plain that payment of a note to a person who has no authority to receive the money does not extinguish the debt." In *Fortune v. Stockton*, 182 Ill. 454, it was said: "The just rule of the law is, that a person shall not be bound by the act of another who assumes to act for him and in his behalf, where he has neither authorized the assumed agent to do the act nor conferred apparent authority upon him. Where one assumes to act for another, that fact is notice to those who deal with him that there must be a delegation of authority from the principal and they are bound to ascertain its existence and extent. In ascertaining such authority of the agent, a third party may rely upon the apparent authority which the alleged principal holds the agent out as having, because to permit the principal to repudiate the authority in such a case' would be to enable him to commit a fraud on other parties. . . . It is practically the universal custom to take up and cancel notes when they are paid and for one who is authorized to collect, to have possession of the notes and be able to surrender them. . . . Where an agent has possession of a note that is due, it may be inferred that he has authority to receive payment of it, but such an authority could not be inferred from that fact in a case like this, where the paper was not due."

In the instant case the only inference of authority to receive payment of this note arose from the fact that the person who said he was a representative of appellee had possession of appellant's note. The

note, however, lacked 10 days of being due and appellant, therefore, was not warranted in assuming that the possessor thereof was authorized to receive the principal sum. "If payment was made to a third person the burden is on the defendant to show that such person was authorized to receive payment or that the money reached the holder's hands." 8 C. J. 1012. Under the foregoing authorities, it is our opinion that the possession of the note by appellant imposed upon appellee, upon the trial of the issues made by the pleadings, the burden of going forward with the evidence to show that the possession of the note by the maker was the result of a mistake or that he acquired it without authority from the rightful holder and owner and that the rightful holder had not received the money paid. This appellee did and there being no countervailing evidence there was no disputed question of fact for the jury to pass upon and the trial court, at the close of all the evidence properly directed a verdict for appellee.

Counsel finally argue that the evidence discloses that mistake after mistake was made by appellee in its Milwaukee office; that this note left appellee's office through no error on the part of appellant and he therefore seeks to invoke the familiar rule of law which holds that where one of two innocent persons must suffer loss, then the one who makes the loss possible by his negligence must stand the loss. Counsel also advances two theories as to how appellant came into possession of this note. One is that appellee mailed this note to Noeske Bros. at Freeport instead of to Maxey at Polo and that then someone took it to Maxey and received payment from him. The other theory of counsel is that after the note came into appellee's office at Milwaukee, after having been requisitioned from the Baltimore office, then somebody knowing the note had not been paid saw an opportunity to

get the note and collect $500 from Maxey and that someone in a tussle with someone else grabbed the note and took it to Maxey and got $500 for it. Neither of these theories is supported in any way by any evidence found in this record. It is true that appellee did make a mistake in its records and stamped the note paid when in fact it was not paid and it made a mistake when it permitted appellant's note to leave its possession, but the uncontradicted evidence is that these mistakes were in fact made and a consideration of the evidence of F. L. McDevitt, office manager of appellee's Milwaukee office, Katherine Farley, supervising bookkeeper in this office and Ruth Lupton, stenographer in the same office, all found in this record, discloses just how the several mistakes were made and in our opinion the doctrine, announced by those cases which hold that where one of two innocent parties must lose by reason of the mistake of one, that then the loss must fall upon the one who makes it possible for the mistake to occur, is not applicable to the facts as disclosed by this record.

The judgment of the trial court is affirmed.

*Judgment affirmed.*