Rose I. Telpner, Ex'trx of the Estate of Louis Telpner, Deceased, Plaintiff-Appellant, v. Robert Hogan, Defendant-Appellee.

(No. 57637;

First District (2nd Division)—January 16, 1974.

Barclay, Damisch & Sinson, Ltd., of Chicago (John W. Damisch and Theodore W. Wrobleski, of counsel), for appellant.

Coghlan and Joyce, of Chicago (William J. Nellis, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Rose I. Telpner, the widow of Louis Telpner, brought this suit in her capacity as the legal representative of his estate. The decedent

at the time of his death on September 23, 1963, had in his possession eight promissory notes that are the subject of this action; seven of the notes were made out to Louis Telpner, as payee, by defendant Hogan as maker, and defendant is guarantor on an additional bearer note. The principal amount due on the notes was $19,862.00. Additionally, plaintiff sought recovery of interest in the amount of $5,016.29 and attorney's fees of $1,326.41. Thus, plaintiff's total claim amounted to $26,204.70.

Judgment by confession was originally obtained and defendant petitioned to vacate that judgment. The judgment was opened and the defendant was granted leave to defend; thereafter, defendant filed his answer admitting his signature on the eight notes and alleging the defense of payment as to three of the notes and the defense of lack of consideration as to the remaining five notes. Defendant also filed a counterclaim against plaintiff in the amount of $6,000.00 pursuant to chapter 74, paragraph 6, Illinois Revised Statutes (1965), alleging usury as to a $6,900.00 note (one of the eight) dated March 14, 1962. After a trial without a jury, the court ruled in defendant's favor as to the notes, and against the defendant on his counterclaim, and it is from the judgment for defendant that the plaintiff prosecutes this appeal.

The issues presented for review are:

1. Whether the rulings of the trial court with respect to the order of proof and scope of cross-examination constituted prejudicial error.

2. Whether plaintiff's failure to list, in verified probate documents, the specific and entire indebtedness claimed to be owing in this suit constituted sufficient evidence that said debts had been released and satisfied.

3. Whether the evidence supported the trial court's finding that the defendant had discharged his indebtedness on the notes sued upon.

At the trial plaintiff presented the eight notes, each bearing defendant's admitted signature, and testified that each of the notes was in decedent's possession at the time of his death. In his cross-examination of the plaintiff, the defendant questioned the plaintiff regarding a number of documents, each of which purported to be a statement of the account between the defendant and the estate of Louis Telpner. In each instance the amount due from the defendant differed from the amount claimed in this action.

The first such document was an inventory of plaintiff's husband's estate which the plaintiff had filed with the Clerk of the Probate Court of Lake County on July 7, 1964. The inventory listed the following sums owed by the defendant:

| | |
|---|---|
| Robert Hogan—cash advanced | 7,875.38 |
| Robert Hogan—Land Account | 3,986.00 |

thus claiming a total indebtedness due the estate from defendant in the amount of $11,861.38.

The second document was a statement prepared by the decedent's accountant at the plaintiff's request covering the period from Oct. 22, 1958, to Aug. 30, 1965. The statement reflected a sum of $16,666.54 due to the estate from the defendant as of Aug. 30, 1965.

The plaintiff also identified an affidavit which she had filed in this suit on March 28, 1967, in opposition to defendant's motion to vacate the judgment entered on the eight notes. The relevant portion of the affidavit states:

"That from October 22, 1958, to December 14, 1965, there are various and sundry charges against Robert T. Hogan in behalf of Louis Telpner or his estate, representing loans, insurance premiums, mortgage payments, taxes, etc. in a total amount of $59,-539.62, against which credits are given including payments made, in the amount of $33,676.60, leaving a present balance of $25,-863.02.

That the eight notes upon which judgment was confessed, were given by Robert T. Hogan to secure specific loans, none of which were ever paid and the total principal amount of such notes being $19,862.00, a sum far below the amount of $25,863.02, presently owed by Robert T. Hogan to the estate of Louis Telpner."

The defendant continued his cross-examination of the plaintiff by requesting that she explain the apparent discrepancy among the various figures. The defendant had the plaintiff identify two additional documents: the first was a revised current accounting and supplemental data filed by her as executrix reflecting that $5,415.39 had been collected on defendant's account; the second was a receipt for $600 made out to defendant by the decedent in 1963. The defendant then continued to question the plaintiff about various financial dealings with defendant.

Defendant, called by plaintiff as an adverse witness, testified that he had made numerous payments, by cash and check, on the various notes. Defendant submitted numerous checks, payable either to the plaintiff, her husband, the estate, Samuel Jacobsen, Coral Gables Federal, or to cash. The defendant explained in his testimony that some payments were made to Samuel Jacobsen, his attorney, since the latter acted as the defendant's agent and that some of the checks were for payments on the Telpner notes. The record does not disclose which payments were applicable to which notes. One receipt for a cash payment of $600.00 to Mrs. Telpner was also identified by defendant. The record further indicates defendant and decedent prior to decedent's death conducted many transactions involving insurance, real estate, and financial transactions.

The defendant rested after plaintiff rested and offered no further evidence in support of the defense of lack of consideration alleged in his answer with regard to five of the notes or of specific payments applicable to the eight notes.

Both parties in their briefs refer to various exhibits identified during the trial by either plaintiff or defendant. Plaintiff had marked the eight notes which were the subject of the suit. Testimony was elicited concerning these eight notes and the record discloses plaintiff offered these, as well as other exhibits, into evidence. The record does not disclose that the trial court ruled on the offer of any of plaintiff's exhibits. Likewise, although defendant presented no witnesses, he had identified and used during the cross-examination of plaintiff's witnesses (including himself as an adverse witness) certain exhibits. At the conclusion of plaintiff's case, defendant offered exhibits into evidence. The record fails to disclose that any of defendant's exhibits were admitted into evidence. We cannot assume which exhibits were admitted, if any, and which were rejected, if any. Based on the record before us, not one exhibit was admitted into evidence.

The trial court subsequently found that the plaintiff knowingly failed to list the notes in the inventory of the estate and ruled in favor of the defendant stating that:

> "[W]hen she affixes her signature to a legal instrument, then I am going to listen to that instrument and take it at its face value."

## I.

Plaintiff, claiming prejudicial error, first questions the rulings of the trial court with respect to the order of proof and scope of cross-examination.

■■ Plaintiff proceeded with the trial as to the eight notes, relying on the provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 1—101 *et seq.*). Section 3—307(2) of the Uniform Commercial Code provides that:

> "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Ill. Rev. Stat. 1971, ch. 26, par. 3—307 (2).)

The official Uniform Commercial Code comment explains that, under this section:

> "Once signatures are proved or admitted, a holder makes out his case by mere production of the instrument, and is entitled to recover in the absence of any further evidence. The defendant

has the burden of establishing any and all defenses, not only in the first instance but by a preponderance of the total evidence."

At the trial of the instant case the plaintiff presented the eight notes bearing defendant's admitted signature, identified them, and testified that they were in the decedent's possession at the time of his death.[1] At that point the plaintiff had established a *prima facie* case and, under the authority of section 3—307(2), the burden of proving any defense to enforcement of the instrument shifted to the defendant (see *Rago v. Cosmopolitan National Bank* (1967), 89 Ill.App.2d 12, 232 N.E.2d 88). Defendant's counsel cross-examined the plaintiff regarding certain documents which purportedly evidenced payments made by defendant on the notes. Plaintiff made repeated objections to the manner of counsel's cross-examination but the trial court overruled each such objection, stating that, since the case was being tried without a jury, he was the trier of fact and would not allow the burden of proof to be shifted improperly. The plaintiff now contends it was reversible error for the trial court to allow defendant to elicit testimony and introduce documents in support of his defense of payment during plaintiff's case-in-chief.

Normally *the scope of cross-examination is limited to matters* covered on the direct examination. Where the cross-examiner attempts to go beyond the scope of the direct examination in an effort thereby to present his theory of the case, and where on objection the trial court refuses to permit him to do so (on the ground that his attempt is untimely in that it would tend to confuse the issues), the *refusal* of permission is not error. *Darling II v. Charleston Community Memorial Hospital* (1964), 50 Ill.App.2d 253, 200 N.E.2d 149 (involving, as in the instant case, the further examination of a witness who had been called as an adverse witness); *Bryntesen v. Carroll Construction Company* (1963), 27 Ill.2d 566, 190 N.E.2d 315.

On the other hand, precisely because of the breadth of discretion in the trial judge, the *grant* of permission is not necessarily error (*Johnson v. Cunningham* (1969), 104 Ill.App.2d 406, 244 N.E.2d 205; *McEniry v. Tri-City Ry. Co.* (1912), 179 Ill.App. 152). But the case of *Horner v. Bell* (1949), 336 Ill.App. 581, 84 N.E.2d 672, shows that there is a limit to the discretion to permit such questioning, beyond which the granting of permission over objection is reversible error. In *Horner*, plaintiff brought an action against defendant (a sheriff) containing, *inter alia*, a count of conversion. Defendant filed an affirmative defense alleging that he had taken plaintiff's property under a writ of assistance. At the trial,

---

[1] As no issue was raised in the trial court, it is assumed that the record established plaintiff was a "holder" as defined in section 1—201(20) of the Uniform Commercial Code.

plaintiff and other witnesses of his testified in support of his various counts and, in the course of doing so, attempted to anticipate defendant's affirmative defense in respect to the writ, but, on objection, was not permitted to do so. Plaintiff then called defendant as an adverse witness. When plaintiff had completed the cross-examination of defendant, defendant's attorney further examined defendant, in the course of which examination he moved to introduce the writ into evidence and to read it to the jury. Over objection, he was permitted to do so. After the further examination of defendant had been completed, plaintiff rested. Defendant moved for a directed verdict, which motion was granted, the judgment was entered for defendant. On appeal, the judgment was reversed because it was impermissible for defendant to have put in his affirmative defense on further examination of himself during the plaintiff's case-in-chief, even though plaintiff during that case-in-chief had called defendant as an adverse witness. "The orderly procedure of a trial of an action at law does not sanction such practice." (336 Ill.App. at 588-89.)

While *Horner* was a jury trial and the instant case was a bench trial, it is apparent from the record herein that the result of the trial court's rulings on the order of proof and scope of cross-examination served only to confuse the record and all those involved in the trial of this cause. This result is evident by the court's statement made during the examination of the defendant:

> "If you recall, Mr. Redding, these figures are so jostled that not even this Court at this time has a full realization as to what's due and owing or what was due and owing   *   *   *."

■■ It is our opinion that as this case came within the provisions of the Uniform Commercial Code that, pursuant to section 3—307(2) of the Code, once plaintiff established the signatures of the eight notes, the burden of proof as to *all* defenses shifted to the defendant. The record does not establish any dispute as to the genuineness of the eight notes, and the fact that the plaintiff was the holder. Defendant raised the issues of the failure of consideration as to five notes and of payment as to three notes. We believe the cross-examination of plaintiff exceeded the bounds of propriety and necessity and resulted in a record which did not aid the fact-finding process.

## II.

Plaintiff next contends that the trial court erred in considering that plaintiff's failure to list in verified probate documents the specific indebtedness arising from the eight notes constituted sufficient evidence that said debts had been released and satisfied.

In ruling for the defendant at the close of the trial, the court stated:

"I can understand her (the plaintiff) being frustrated, I can understand anything, but when she affixes her signature to a legal instrument then I am going to listen to that instrument and take it at its face value."

A review of the record leaves no doubt that the "legal instrument" referred to by the court was the inventory of Louis Telpner's estate which the plaintiff had signed in her capacity as executrix. Thus, the trial court relied on that document and on the absence of any supplemental inventories as conclusive evidence of the amount of defendant's indebtedness to the estate.

It is not subject to dispute that, under section 171 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 171), plaintiff, as executrix, was obliged to file with the clerk of the court a verified inventory of the real and personal estate which has come to her knowledge and of any cause of action on which she has a right to sue. The statute imposes a further duty to file a supplementary inventory if any real or personal estate comes to the knowledge of the executor after she has filed the initial inventory.

■■ In the instant case the amount of defendant's indebtedness to the estate as listed in plaintiff's inventory is less than the amount claimed in this suit. Defendant now argues that, by virtue of section 177 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 177), the inventory was properly admitted into evidence and constituted competent evidence showing what property decedent owned at his death.

Section 177 provides as follows:

"Inventories and appraisals and authenticated copies thereof may be given in evidence in any suit by or against the executor, administrator, guardian, or conservator but are not conclusive for or against him if other evidence is given that the estate was worth or was sold in good faith for more or less than its appraised value."

Defendant cites as authority for his position the case of *Bailey v. Robison* (1908), 233 Ill. 614, 84 N.E. 660 where the court interpreted the predecessor provision of section 177. There the administrator brought suit upon two $1,000 notes payable to the decedent and the issue presented was whether a $1,500 payment by a check to the decedent a year before his death pertained to the notes. The trial court had directed a verdict for the administrator. In reversing that judgment and remanding the cause for a new trial, the court stated:

"There is no evidence whatever in this record tending in the slightest degree to show that appellants owed Dr. McCoy anything except the notes involved in this suit at the time this check was delivered. In our opinion these circumstances have a direct

tendency to prove that the $1500 was paid on these two notes." (233 Ill. at 618.)

The court went on to criticize the exclusion of the inventory at trial:

"Inventories and bills of appraisement, and authenticated copies thereof, are made competent evidence by paragraph 56 of chapter 3, Hurd's Statutes. Such inventory is not conclusive of the value of the estate, but it is competent evidence tending to show what property the decedent owned at the time of his death. We think that the inventory corroborated the testimony given for appellants tending to show that there was no other indebtedness at the time the check was given than the notes involved in this suit. * * * The inventory slightly tended to strengthen the contention of appellants, and therefore the court should not have denied them the benefit to be derived from this circumstance." (233 Ill. at 619.)

Thus, our supreme court there did not hold that an inventory is conclusive evidence of the property owned by a decedent at his death as defendant urges, but, rather, an inventory is competent evidence having some probative value when used to corroborate other substantial evidence of the property owned at decedent's death.

■■ Defendant's citation of *Monroe v. Becker* (1918), 283 Ill. 42, 118 N.E. 1025 and *Beebe v. Kirkpatrick* (1926), 321 Ill. 612, 152 N.E. 539 is inappropriate. So far as applicable to the instant case, *Monroe* merely holds that an inventory is competent only against the one compiling it and not against third parties. In *Beebe*, a claimant of the assets of the estate failed to file her claim within the statutory one year period and brought suit to recover the amount of her claim from the heirs of the estate. The court invoked the presumption that an executor or administrator has properly "performed his duty of inventorying and accounting for all of the assets of the deceased" (321 Ill. at 618), since the evidence in the case failed to show that any of the decedent's assets were not inventoried or accounted for.

■■ Thus, in the case at bar, the trial court placed undue emphasis on the importance of the verified inventory as evidence of property owned by Louis Telpner at the time of his death. Since the court based its finding on this improper interpretation of the law, its error was highly prejudicial to the plaintiff and constitutes grounds for reversal.

We have previously noted that no exhibits were actually admitted into evidence. Although a copy of the inventory of the decedent's estate was marked and inquiries about the inventory were directed to plaintiff, procedurally the record also does not support the court's conclusion.

### III.

Plaintiff lastly contends that the trial court's judgment in favor of the defendant was not sustained by the manifest weight of the evidence. We agree.

■■■ Numerous cancelled checks were identified in the record as evidence to support defendant's defense of payment. Again, we must note that none of the checks were admitted into evidence. According to the testimony, many of the checks were made payable to defendant's attorney, Samuel Jacobsen, and endorsed by him. Defendant explained in his testimony that Mr. Jacobsen received the payments as defendant's agent, but the defendant's statements standing alone are not sufficient to show that his indebtedness had been extinguished by payments made to Mr. Jacobsen. The plaintiff correctly maintains that a maker of a note bears the burden of showing that the third person was authorized to receive payments or that the money reached the hands of the holder of the note. See *Commercial Credit Co. v. Maxey* (1937), 289 Ill.App. 209, 219, 7 N.E.2d 155.

Additionally, it must be noted that the eight notes were in the decedent's possession at the time of his death. In such a case, *i.e.*, where an uncancelled instrument is in the hands of the payee, a rebuttable presumption exists that the debt evidenced by the instrument has not been paid. *Messick v. Darnall* (1935), 281 Ill.App. 375, 379.

■■■ Defendant offered no evidence to support his defense of lack of consideration; and the record certainly cannot establish his payment of any specific note. Having submitted so little evidence to support his position, we must conclude that the trial court's decision was against the manifest weight of the evidence. The judgment of the circuit court of Cook County must be reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

HAYES, P. J., and LEIGHTON, J., concur.