TALLY HO ASSOCIATES, INC., Plaintiff-Appellant, v. WORTH BANK AND TRUST COMPANY, Defendant-Appellee.

First District (4th Division)  No. 1—93—1442

Opinion filed June 30, 1994.

958

DiSilvestro & Associates, of Chicago (Robert J. DiSilvestro, of counsel), for appellant.

Barrett, Sramek & Jasinski, of Palos Heights (Gerald J. Sramek & Bernadette Garrison Barrett, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Tally Ho Associates, Inc. (Tally Ho), was assigned the beneficial interest of a land trust as collateral for an installment note, but Edward Halleran, the debtor on the note, retained the power of direction. The defendant, Worth Bank & Trust Company (Worth Bank), was the trustee of the land trust. Tally Ho appeals from a judgment entered after a bench trial in favor of Worth Bank on Tally Ho's complaint for breach of fiduciary duty and other similar claims. We consider: (1) whether it was against the manifest weight of the evidence for the trial judge to find that Halleran, who had possession of the original note, was discharged; and (2) if he was not discharged, whether Worth Bank, as trustee, had a fiduciary duty to notify Tally Ho, as collateral assignee, that a foreclosure proceeding was instituted against the property and that Halleran exercised the power of direction to convey the property to a third party. For the following reasons, we affirm.

On September 20, 1977, Tally Ho sold a parcel of real property to Halleran for $925,000. On the same day, Halleran transferred title to the property into a land trust with Worth Bank and executed a collateral note to Tally Ho for $100,000. As security for the note, Halleran assigned to Tally Ho the beneficial interest of the trust, but retained the power of direction.

On July 16, 1984, Worth Bank sent a letter to Halleran by certi-

fied mail informing him that a foreclosure suit had been filed against the property. The letter indicates that a carbon copy of the letter was sent to Tally Ho.

On November 30, 1984, Halleran directed Worth Bank to issue a trustee's deed for the property to a third party. Halleran signed an indemnity agreement on December 13, 1984, which stated that the collateral note had been satisfied and that Tally Ho had given him the original note. Halleran agreed to indemnify Worth Bank if Tally Ho filed a lawsuit against the bank seeking damages for issuing a trustee's deed pursuant to Halleran's direction to convey without requiring Tally Ho's consent. The next day, Worth Bank issued the trustee's deed without notifying Tally Ho or obtaining its consent.

After Tally Ho learned of the sale, it filed the present action against Halleran for breach of contract and against Worth Bank for breach of trust, breach of loyalty, breach of impartiality, justifiable reliance, and fraud. Tally Ho dismissed its claim against Halleran prior to trial.

At trial, Carroll Obiala testified that she became president of Tally Ho after the death of her husband, Ed Obiala, Sr., in January 1983. She testified that Halleran made some payments on the note, but did not pay it off in full. She also testified that she did not know whether the original note was given to Halleran.

Edmund M. Obiala, Jr., who was the son of Carroll and Ed Obiala, Sr., testified that he had been treasurer of Tally Ho since 1972, and that he was familiar with the loan transaction between Halleran and Tally Ho. He attended the closing for the sale of the property and testified that Tally Ho received what he thought was the original note at that time. It was not until after 1984 that Tally Ho learned the note it had in its possession was not the original.

Obiala Jr. had numerous conversations with Halleran concerning payment on the note. After Halleran made a $10,000 payment in July 1982, Obiala Jr. had four or five conversations with Halleran until Obiala Sr.'s death in January 1983, and he had five more conversations with Halleran until he made a $5,000 payment in October 1983. That check noted it was "on acct." Obiala Jr. had 14 more conversations with Halleran after the October 1983 payment. Halleran never told Obiala Jr. that the note had been satisfied or discharged. There are no corporate records which show that the note was satisfied, and Obiala Sr. never told Obiala Jr. that the note was satisfied. Tally Ho's record of Halleran's payments on the note showed an outstanding principal balance of $90,000.

Obiala Jr. also testified that Tally Ho did not receive a carbon copy of the letter dated July 16, 1984, which Worth Bank sent to

Halleran informing him of a foreclosure action against the property. In early 1985, Obiala Jr. first learned that foreclosure proceedings were instituted against the property. Also, Worth Bank never sought Tally Ho's approval to convey the property out of trust in 1984, Tally Ho never signed a letter of direction to that effect, and Worth Bank never informed Tally Ho that the property had been sold.

Thomas Potpora testified that he was the secretary for Tally Ho. Potpora was at the closing on the property in 1977 and thought the note in Tally Ho's possession was the original. Potpora did not know how Halleran obtained the original note. Obiala Sr. never told Potpora that he had cancelled the note, and Tally Ho continued in its efforts to collect on the note even after Obiala Sr.'s death. Worth Bank never notified Tally Ho of the foreclosure action or of the conveyance of the property out of trust.

Halleran testified that he made some payments on the note to Tally Ho, but in 1980 or 1981, Obiala Sr. gave him the original note back and Halleran understood that he did not owe on the note any longer. He acknowledged that there was nothing on the original note indicating that it had been cancelled or paid. He testified that a $10,000 check he wrote in June 1982 was a gift in response to Obiala Sr.'s request because he was having financial difficulty. The $5,000 check written in October 1983 was also a gift. On redirect, Halleran testified that he could have received the original note from Obiala Sr. when he made the $10,000 payment in June 1982.

The trial judge found that because Halleran produced the original note at trial and Tally Ho could not explain why it did not have the original, the evidence presented at trial established that Obiala Sr. gave the note to Halleran with the intent to discharge him. However, the trial judge stated that he found some of Halleran's testimony incredible. Judgment was entered in Worth Bank's favor and Tally Ho now appeals.

OPINION

Tally Ho first argues that it was against the manifest weight of the evidence for the trial judge to find that Halleran was discharged from his obligation on the note.

In a bench trial, the trial judge must weigh the evidence and make findings of fact; where evidence is conflicting, the judge must weigh it and consider it in view of all of the evidence. (*Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 581 N.E.2d 656.) A reviewing court will defer to the trial judge's findings of fact when they are dependent on the credibility of the witnesses unless the findings are against the manifest weight of the evidence. (*Kalata*, 144

Ill. 2d 425, 581 N.E.2d 656.) A ruling is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.* (1992), 240 Ill. App. 3d 737, 607 N.E.2d 1337.

■ Under the Uniform Commercial Code, "[a] person entitled to enforce an instrument may, with or without consideration, discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act such as surrender of the instrument to the party." (810 ILCS 5/3—604(a)(i) (West 1992); see *Bank of Naperville v. Catalano* (1980), 86 Ill. App. 3d 1005, 408 N.E.2d 441.) "In an action on a negotiable instrument *** the plaintiff cannot recover unless he produces the instrument [at] trial *** or shows an excuse for its nonproduction, as where it has been lost or destroyed, since the law will presume that the instrument has been paid or put in circulation if not produced." (28 Ill. L. & Prac. *Negotiable Instruments* § 301, at 563 (1957).) When the maker has possession of a negotiable instrument, a presumption arises that the debt has been discharged; however, it may be rebutted by other evidence. (*Commercial Credit Co. v. Maxey* (1937), 289 Ill. App. 209, 7 N.E.2d 155; see also *Selimos v. New Tom's Restaurant Co.* (1950), 340 Ill. App. 417, 91 N.E.2d 909 (abstract of opinion) (possession of negotiable instrument by debtor creates rebuttable presumption that instrument was paid).) On conflicting evidence, the issue of whether a party has been discharged of his obligation on a note is one of fact. *Associates Discount Corp. v. Frye* (1947), 330 Ill. App. 427, 71 N.E.2d 175 (abstract of opinion); 28 Ill. L. & Prac. *Negotiable Instruments* § 302, at 566-67 (1957).

■ In this case, Tally Ho's claims against Worth Bank are dependent on proving that Halleran was obligated to pay the note at the time of Worth Bank's alleged misconduct in 1984. Halleran's possession of the original note raised a rebuttable presumption that his obligation under the note was discharged. Whether the presumption was rebutted is a question of fact and dependent on the credibility of the evidence presented at trial.

The evidence in Tally Ho's favor showed that Obiala Jr. and Potpora thought the note Tally Ho received at the closing was the original and that Obiala Sr. never told them that Halleran was discharged from his obligation on the note. Halleran was not certain when he received the original note, but accepting his testimony that he received it from Obiala Sr. in 1980 or 1981, he subsequently gave Tally Ho two checks for $10,000 and $5,000; the check for $5,000 was given after Obiala Sr.'s death and with a notation that it was "on acct." Further, when Tally Ho continued in its efforts to obtain Halleran's payments on the note after the time Halleran claims he

received the original note, he never told Obiala Jr. that he had been discharged. Tally Ho's record showed the note was not paid, and the note itself did not have any indication on it that it had been paid or discharged. In favor of Worth Bank, in addition to the presumption that Halleran had been discharged, the evidence showed that the payments Halleran made to Tally Ho after he obtained the note were gifts to Obiala Sr. because he was having financial difficulty.

Tally Ho did not present evidence to rebut the presumption of discharge and explain why it did not have the original note. It only presented evidence that Obiala Jr. and Potpora believed the note Tally Ho had was the original. An inference could be made from the evidence presented that through some error Tally Ho received a copy of the note at the closing and Halleran received the original, but this inference was not sufficient to rebut the presumption of discharge. Although the trial judge found some of Halleran's testimony was unbelievable, he believed Halleran's testimony that Obiala Sr. gave him the note with the intent to discharge him. The opposite conclusion was not clearly apparent from a review of the evidence presented at trial and, as a result, the trial judge's finding was not against the manifest weight of the evidence.

However, even if this court found that there was sufficient evidence to rebut the presumption that Halleran was discharged, Tally Ho would not prevail on its claims against Worth Bank. Tally Ho asserts that Worth Bank, as the trustee, had a fiduciary duty to notify Tally Ho, as the collateral assignee, that a foreclosure action was filed against the property and that Halleran exercised his power of direction to convey the property to a third party.

Tally Ho relies primarily on *Williams v. Independence Bank* (1990), 201 Ill. App. 3d 685, 559 N.E.2d 201, which held that a bank holding a land trust breached its fiduciary duty when it failed to notify a beneficiary of the trust that a foreclosure suit was brought against the property. In *Williams*, as in the present case, the beneficiary did not have the power of direction. A judgment of foreclosure was entered and the property was eventually sold. The appellate court found that under the factual circumstances, the trustee should have notified the beneficiary of the foreclosure proceedings because he could have intervened and defended his claim to the beneficial interest.

Accepting Tally Ho's position in this case that the evidence at trial showed Worth Bank did not notify it of the foreclosure proceeding, *Williams* does not require a similar holding here. Because there was no judgment of foreclosure entered against the property in this case, Tally Ho's alleged damages did not stem from Worth Bank's

failure to notify Tally Ho that a foreclosure action had been filed. Therefore, the claim based on Worth Bank's failure to notify Tally Ho of the foreclosure suit is without merit.

Further, even if it was against the manifest weight of the evidence to find that Halleran was discharged from the note, Worth Bank did not have a fiduciary duty to notify Tally Ho that Halleran exercised his power of direction or to obtain a release of the collateral assignment. Tally Ho concedes there is no authority for its position, but seeks to extend *Williams* to require a trustee to notify a collateral assignee that a power of direction was exercised to convey the property to a third party. The rationale of *Williams* to require notice of a foreclosure proceeding so a beneficiary may intervene is not applicable to the present situation because Tally Ho had no power to stop the conveyance or otherwise assert any rights. Tally Ho accepted the collateral assignment subject to Halleran's power of direction and Worth Bank was required to comply with the exercise of that power. Tally Ho's claim on this point is also without merit.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and CAHILL, JJ., concur.