[Civil No. 4184.   Filed September 23, 1940.]

[105 Pac. (2d) 514.]

AGNES HORAN, a Widow, Appellant, v. RICH-FIELD OIL CORPORATION, a Corporation, Appellee.

Messrs. Armstrong, Kramer, Morrison, Roche and Duffy, for Appellant.

Mr. Henderson Stockton, Mr. Eli Gorodezky, Mr. S. N. Karam and Mr. J. W. Cherry, Jr., Attorneys for Appellee.

LOCKWOOD, J.—This is an action by Agnes Horan, hereinafter called plaintiff, against Richfield Oil Corporation, a corporation, hereinafter called defendant. The case was tried to the court sitting with a jury, and at the close of plaintiff's evidence, defendant moved for an instructed verdict upon four grounds, as follows:

"(a) that the evidence wholly failed to prove any liability;

"(b) that there was no evidence sufficient to sustain the allegations of the complaint that the service station was maintained and operated by the defendant;

"(c) that the evidence proved the plaintiff to be a mere licensee, and the evidence is insufficient to justify a verdict for the plaintiff; and

"(d) that the evidence proved that the alleged negligence of defendant did not in any way cause or contribute to the alleged injury to plaintiff."

■■ The court granted the motion, giving (c) as a reason therefor, and plaintiff has appealed from the judgment. If any of the four grounds presented in the motion are good, the judgment must be affirmed, for if the result reached is the only one that could be reached legally, it is immaterial if the trial court acted upon a wrong reason. *Eisentrager* v. *Great Northern Ry. Co.,* 178 Iowa 713, 160 N. W. 311, L. R. A. 1917B 1245. Under these circumstances, it is necessary that we examine the evidence for if there is evidence in the record from which a jury could reasonably have found in favor of plaintiff on all of

the material allegations of her complaint, it was error to direct a verdict.

The facts, taken as strongly in favor of plaintiff's case as they may be from the evidence, show the following situation: The premises involved in this action were owned by the O'Malley Lumber Company, a corporation, and were by it leased to the defendant, which had thereon a gasoline service station with the usual appurtenances. On December 30, 1937, defendant subleased the premises to James C. Estes. Among the conditions of the sub-lease was the following:

"Maintenance:

"3. Lessee shall, during the term hereof, maintain the demised premises, improvements, buildings, fixtures and equipment in good order and repair and in a clean and safe condition. In the event of Lessee's failure so to do, Lessor may enter upon the demised premises and make the necessary repairs for the account of Lessee and/or may terminate this lease. Lessee shall make no change, alteration or substitution in the demised premises, improvements, buildings, fixtures and equipment except such as may be necessary to enable Lessee to continue business on said premises unless the consent in writing of Lessor be first obtained."

At some time during the spring of 1938 a car which was being serviced upon the premises skidded and struck a concrete step which led up into the office used in the operation of the station, chipping off a certain amount of concrete from the edge of the step. Both the lessor and lessee had knowledge of this condition shortly after it happened, but it was never repaired by either one. The lessor had for some time been dissatisfied with the manner in which Estes maintained the station, and on May 5 its branch manager wrote him in regard thereto as follows:

"It is beyond my capacity of reasoning to understand why a person such as yourself, and with the training you have had, would tolerate such a slovenly

condition. The motoring public will not tolerate it and we serve the motoring public; so you can make your own deductions.

"I have talked about this station for the last time, and unless steps are taken at *once* to clean up this location, arrange stock in some order, rid out all of the junk and crap and keep it that way; you may have my personal assurance that *the operation of this station will be changed.*" (Italics ours.)

On May 24th four officials of defendant, together with a man named Combs, came into the service station and, according to the testimony of Estes, one of the officials said in substance:

" . . . they was putting in a new operator in the unit, there was no personal feelings between himself and myself, but it was orders from the company which, all in all, I guess, talking about ten to fifteen minutes."

One of the other officials then introduced Combs and Estes, saying: "Estes, this is Mr. Combs, he is taking this unit over." The officials then checked over the equipment owned by defendant in the service station, and told Estes: " . . . anything I had there that Mr. Combs wished to purchase, he would pay me the wholesale prices for it."

Combs then took possession of the station, and after some discussion with Estes in regard to certain personal property, which the latter owned and used in the operation of the station, bought some of it, paying therefor by a personal check. On the next day Estes returned to the station to take away some of his personal equipment which Combs had not purchased, and also to try and collect a few oustanding accounts for products sold while he was the lessee. Plaintiff, who had been a regular customer of Estes, came in and had her car serviced by Combs, whereupon she asked the latter if he was working for Estes, to which Combs replied that he was operating the station at that time. She then asked Combs if he would sign a

certain political petition, which he advised her he could not do, but said: "Come in at any time and get the signatures of the other employees." She left but returned later and when she left the second time her foot caught on the edge of the step and she fell, injuring herself. It was on account of this injury that this action was brought.

We think the first and the vital question in the case is whether the property at the time of the accident was in the possession and under the control of defendant acting through its employee and agent, or whether it was in the possession of an independent operator under a contract or lease with defendant. If it was the first, then defendant would be liable for any violation of a duty which it owed to plaintiff. If, on the other hand, defendant was merely the lessor of the premises to an independent operator, and plaintiff, while on the premises either as the invitee or licensee of the independent operator, was injured, no liability on the part of defendant would exist.

It was, of course, incumbent upon plaintiff to sustain the burden of showing affirmatively by competent evidence that defendant was in possession of the premises as above set forth at the time of the accident. The only evidence on this point was the testimony of Estes, which we have quoted *verbatim* so far as it bears upon this issue. This testimony shows that Estes was an operator under a lease, which placed upon him the burden of keeping the premises in proper condition. While the lessor had the option of going upon the premises and making repairs at the cost of the lessee, it was not obliged to do so, but could cancel the lease for failure of the lessee to perform his duty, and, as a matter of fact, as is shown by the letter above quoted and the other evidence, after a warning to him that he was not maintaining the premises in a proper manner, it did cancel the lease. It

will be noted that defendant in its letter stated: "the operation of this station will be changed." When the officials of the defendant told Estes they had cancelled his lease, they stated "a new operator" will "take over." The only reasonable implication from these statements is that Estes would be replaced by another man under the same general terms and conditions, and not that defendant would itself operate the station. Further, it appears that the new operator Combs personally purchased about $400 worth of personal property from Estes for use in the business and paid for it himself, and that nothing which Estes owned was bought by defendant. This is certainly incompatible with the idea that Combs was merely a hired employee, for hired employees are not in the habit of purchasing property for their employers with their own funds. Had plaintiff desired, she could have subpoenaed the defendant's officers and examined them on the relation of Combs to defendant, under section 4416, Revised Code of 1928.

█ We are of the opinion that there is not evidence in the record sufficient to go to a jury on the question of whether defendant was in possession of its station through a hired employee, and that the only reasonable construction which can be based on the evidence offered is that Combs was in possession as an independent operator, in the same general manner as was Estes before. Such being the case, the court should have granted an instructed verdict on the second ground set forth in the motion. It is, therefore, immaterial whether plaintiff was, as contended by her counsel, an invitee, or, as urged by defendant, a licensee, at the time she was injured. In either case, she was the invitee or licensee of Combs, an independent operator, so far as the evidence goes, and defendant was not liable for the negligence of the latter.

There are one or two alleged procedural errors set forth in plaintiff's opening brief, which we have examined, and we are of the opinion that even if they are technical errors they are not sufficient to cause a reversal of the case.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.