[File No. 6855.]

THOMAS KADY and Norman Kady, a Copartnership under the Name of Thomas Kady & Son, Appellants, v. HERMAN L. SCHUTTE, Also Known as H. L. Schutte, Respondent.

(5 NW (2d) 721.)

Opinion filed October 2, 1942. Rehearing denied October 24, 1942.

*Samuel Rubin* and *Fred E. Harris* (*Scott Cameron* on oral argument) for appellants.

*F. T. Cuthbert,* for respondent.

BURR, Ch. J.   Thomas Kady is a sole trader, operating under the name of Thomas Kady & Son and herein is designated the plaintiff—the Schuttes being designated generally father and son, as the case may be.

The defendant guaranteed the payment of a series of 15 notes which his son, J. L. Schutte had executed and delivered to the plaintiff, each for $400 with interest at 6% and due serially one month apart.   The execution of the notes was the outgrowth of negotiations between the son and the plaintiff for the purchase and sale of 16 Wurlitzer phonographs at the agreed price of $6,600, $600 cash and the remainder in these monthly installments, and this suit is against the father alone on three causes of action set forth in the complaint.

The first note became due March 25, 1941.   There was paid on this note the sum of $200 and the father gave to the plaintiff, at the time of payment, a check for $200 dated April 10, 1941.   Plaintiff returned the note, but on April 9, payment of the check was stopped. This condition is the basis for the first cause of action.

The second cause of action is on the second note, due April 25, 1941, both father and son having defaulted.

The third cause of action is on the third note, due May 25, 1941, and unpaid.

The answer alleges:   failure of consideration for the first note; fraud in the securing of the contract for the purchase and sale of these phonographs; fraud in securing the series of notes; the rescission of the contract of guaranty because of such fraud; and, as a counterclaim:   demands that the amounts already paid be refunded; that the notes be returned to the defendant; or that he have judgment against the plaintiff for the amount thereof.

A reply was interposed to the counterclaim.   The case was tried to the court.   Judgment was entered for the defendant, the court find-

ing: that the contract had been secured through fraud and was duly rescinded; that the defendant was entitled to the return of the amount paid; and to judgment against the plaintiff for the outstanding notes unless the same were returned to the defendant and canceled. From the judgment entered the plaintiff appeals demanding a trial de novo.

The contract is evidenced by three instruments other than the notes. The first is an offer to buy the goods. On February 17, 1941, the father and son signed an order, Ex. A., directed to the plaintiff to: "send following: 16 Wurlitzer phonographs . . . which I agree to receive and pay for upon the following terms, F. O. B. . . . Price $6,600.00 Terms $600 Cash Balance $6,000 at $400 month until fully paid Payments beginning March 25th 1941 with interest thereon at 6% from date until paid, payable monthly.

"This order to be fully warranted by vendee. . . . It is fully understood and agreed by the parties hereto that the above articles shall remain the property of Thomas Kady & Son until fully paid for. This order is given subject to your approval."

The second instrument is Ex. 4, dated February 25, 1941. This is a contract of purchase and sale of 16 phonographs and equipment for $6,600 to be paid by $600 cash and instalment payments of $400 per month, and contains a large number of provisions in fine print which have no bearing upon the case. At the time of the execution of this contract it was agreed the son was to be the purchaser and the father was to guarantee the payment of the notes. There is confusion in the instruments and in the testimony as to the exact dates of this exhibit and the notes, but the evidence shows this formal contract was executed subsequent to the order, but evidently dated to correspond with the date of payments set forth in Ex. A. Clearly Ex. 4 was the culmination of, and superseded the order., Ex. A.

This contract is signed by Thomas Kady, as vendor, and by J. L. Schutte, the son, as vendee. The father declined to sign it, and because of Ex. 4, the defendant's liability upon the order, Ex. A., ceased. His subsequent liability arose under another instrument.

Whatever be the true date of Ex. 4, it was taken as the date for the issue of the notes, and fifteen notes for $400, each dated February 25, 1941, and due serially a month apart, were executed by the son and

"payment guaranteed" by the father: Under the terms of the contract, Ex. 4, the son paid to Kady the initial payment of $600, the amount being advanced to him by his father. It was not a payment by the father.

The third instrument, Ex. B., embodies the liability of the father. The record shows the plaintiff, though selling the goods to the son, desired to have the notes guaranteed by the father and there were negotiations between Thomas Kady and the father to this effect.

Defendant says he told Mr. Kady he would guarantee the notes "providing you will give me a side agreement that you will not hold me responsible for the balance due or credit any deficiency judgment against me in case of default payment;" and that after some hesitation Kady said: "All right, we will go right up to Mr. Cuthbert's office and have this agreement made up." This does not appear to be denied by the plaintiff. Accordingly plaintiff and the two Schuttes executed Ex. B. wherein it is recited that the son had purchased the 16 phonographs from plaintiff and was to pay as hereinbefore stated and was to execute 15 notes "each to be signed by the said J. L. Schutte and the said Herman Schutte, which notes are in addition to the Six Hundred Dollars ($600) cash paid." The contract then provides: "It is understood and agreed between the parties that in the event there is a default that upon restoring to the first party (the plaintiff) all of the above described property within ten days after demand therefor has been made by the first party, then in that event the said Herman Schutte shall have such notes canceled and returned to him, and he assumes the obligation of returning all of the above described property. . . ."

Thereupon the father subscribed the notes "Payment guaranteed. H. L. Schutte."

On or about May 2, 1941, the Schuttes mailed to the plaintiff Ex. F., a written notice of rescission of the contract, Ex. 4, which notice refers to the provisions of the contract, Ex. B., and recites that the father:

"In accordance with the provisions of that separate contract entered into between you . . . and H. L. Schutte, . . . though you have not made the demands therein provided for, had by reason of the

rescission hereby tenders back to you all of the property, machines and equipment, referred to in such contracts and purchased from you.

"You are further notified that, whereas, such property and equipment is already placed in various towns and various counties in Ramsey County and surrounding counties, and were so located in such places at the time of entering into such contract, the same are hereby restored to you in the various places where located at the time when entering the contract."

The notice demanded the return to the father of the $800 already paid.

Shortly after giving the notice or rescission they served an additional or amended notice, Ex. K., supplementing the first notice. Therein they state that there was collected by them from the machines the sum of $339.55 and they authorize the plaintiff to deduct this sum from the $800 which they claim should be returned to them. This supplementary notice states, "you are further notified that each of the undersigned claims to have nothing more to do with the property referred to in the various contracts and notify you that the same are at your disposal and that you will govern yourself accordingly."

This $339.55 was the intake of the machines during the time they were in the possession and under the control of the Schuttes and it was their money.

The main basis for the charge of fraud is that prior to the execution of the contract the plaintiff, who was selling the machines at a stipulated price, had stated to the purchaser that these machines were worth the price he was asking, whereas, in truth and fact, they were not worth more than about one fourth of the price. It was also alleged, as evidence of fraud, that as an inducement to enter into the contract the plaintiff alleged the machines would earn enough per month to pay the installments as they became due and the machines failed to do so. Claim is made that the contract was executed in reliance on such representations.

Before the son entered into the contract he had examined some of these machines that were being sold to him, knew their locations and knew something about the method of the intaking of money from such form of slot machines. It is not necessary to set forth the evidence.

We are satisfied there was no fraud in the inception of the contract justifying rescission on that ground; certainly not by the father, for he is not a party to Ex. 4, the contract. His liability arises on his contract to guarantee payment of the notes.

There being no right of rescission the defendant is not entitled to a return of the amount he paid on the first note, because of the attempted rescission; nor is he entitled to a return of the initial payment of $600. In addition, the father did not make the initial payment. His son did, having borrowed it from his father, and the son is not a party to this action.

The defendant's liability is predicated on Ex. B. There is some confusion with reference to one of the purposes in executing this exhibit. There was the understanding that the defendant was to guarantee the payment of the notes executed by the son. At first a tentative form was drafted making provision for restoration of the property to the plaintiff upon default in the payment of the notes and when the property was restored the notes were to be canceled and returned to the defendant; but this draft did not contain any provision with reference to demand by Kady nor did it set a time limit. Because of this omission Kady demurred and thereafter Ex. B. was drawn as it now exists.

It is clear from the record and from the reading of Ex. B., that there is some confusion with reference to default, demand, and notice. The plaintiff says that the purpose was to give him ten days after the defendant notified him of default, in which to make arrangements for the future disposition of the property. But a reading of Ex. B. might indicate that upon default Kady could, if he so desired, demand the property back, tell the father what to do with the property and then the latter would be required to restore it within ten days.

The facts, as they exist, render unnecessary, any determination of this apparent confusion. If it was intended that Kady, at his option, could demand the restoration of the property and then the defendant had ten days in which to restore it, then the record shows this option was exercised. The trial court found Kady made no demand but we cannot agree with this view of the evidence as Kady testified he made demand and this is the clear import of the testimony. Thereafter the

father notified him of his attempted restoration as set forth in Ex. F. and Ex. K. If, on the other hand, the defendant was to notify Kady of his intention to default, and give the latter the opportunity to indicate where the property was to be restored, then this was done, and in this connection, if the conditions required Kady to give him notice of demand thereafter, then the defendant could waive the notice as it was for his benefit. , Whichever view is accepted, the fact remains that Kady demanded the restoration of the property because of default and the defendant made an attempt to restore.`

It thus becomes important to determine whether, as a matter of fact, the father "restored" the machines. Nothing is said in the written contracts and agreements as to the manner of restoration or to where the property was to be restored. When the property was bought it was already located and when the attempted rescission was made the property was still at the same various locations. The restoration set forth in Ex. F., is unconditioned though demand is made for the repayment to the defendant of the $800 already paid. The provision regarding restoration and tender was not limited.

Under Mr. Kady's testimony he made a demand and intimates that the father indicated he was not going to comply with the demand unless the $800 was returned. But this did not destroy the effect of the demand.

While the terms "restore" and "restoration" have a variety of meanings, we find that in this connection the parties intended by the use of these terms that the father should merely give back the property to the plaintiff. The words are used in connection with "return" also. So far as the father was concerned the plaintiff's title and possession was to be just the same as if this sale had never taken place. Thus, by the use of these terms the parties had in mind the property would be left where it was, the father and son would claim no interest in it, would exercise no more control over it and to all intents and purposes would leave the property with the plaintiff at the place where it then was. The plaintiff was then free to do with the property whatever he saw fit. The vendor, though demanding the property, never designated any other place for restoration.

The testimony shows the father did restore the property to the plain-

tiff upon demand, and that the plaintiff got the property at the places where situated when he gave possession to the son. We find that the provisions with reference to demand and restoration were complied with and that the Schuttes' restored the property to the plaintiff in accordance with their agreement. This being so the defendant was entitled to have all of the unpaid notes returned to him to be canceled.

On March 25, 1941, when the first note became due, there was paid thereon the sum of $200 and interest and the father issued a check for $200 for the remainder, postdated April 19, 1941. Upon the receipt of the payment and the postdated check the plaintiff returned the note and retained the check. On or about April 9, payment on the check was stopped.

The rule in this jurisdiction is that in the absence of a special or an implied agreement to the contrary, the mere acceptance of a check is not absolute payment, even though the note be surrendered. See Lloyd Mortg. Co. v. Davis, 51 ND 336, 199 NW 869, 36 ALR 465; Busch v. Manahan, 56 ND 491, 217 NW 658.

There is nothing in the record which shows any special agreement. It is a usual transaction. A note was paid partially; the postdated check was given; the note was surrendered; the check was not paid. The plaintiff himself did not consider the note paid for it is made the subject of his first cause of action and therein he asks for judgment on the note.

The cause of action is not based on the check. To destroy any inference which might arise from the possession of the check the plaintiff shows that payment of the check was stopped and therefore there is a balance still due on the note. The acceptance of the check was not a payment on the note, and therefore the liability of the father as guarantor of the first note is to be determined in the same way as his liability on the other notes.

We find that the defendant restored the property as contemplated and therefore has no liability upon the first note now in his possession, and is entitled to have all of the remaining notes canceled and surrendered to him, and that upon failure of plaintiff so to do the father is entitled to judgment against the plaintiff for the amount of said notes, as determined in the lower court; and the defendant is not en-

titled to any judgment against the plaintiff for the $800 sought to be recovered.

The judgment will be modified in accordance with this decision and as so modified it will be affirmed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.