367 P.2d 636

Warren H. STEELE, and Clara May Steele, husband and wife, Appellants,

v.

Marcus C. VANDERSLICE, and Dorothy B. Vanderslice, husband and wife, Appellees.

No. 6725.

Supreme Court of Arizona,

En Banc.

Dec. 29, 1961.

Ellis & Sult, Eloy, and Richard G. Clemans, Casa Grande, for appellants.

Marvin Johnson, Phoenix, for appellees.

ROSS F. JONES, Superior Court Judge.

Plaintiffs, appellees herein, brought an action against defendants, appellants herein, on a promissory note secured by a mortgage on Pinal County real estate in the principal sum of $8,500. The note also provided for interest and reasonable attorneys' fees. Defendants' Answer admits the execution of the note and a mortgage in the principal sum of $8,500, and admits that they have paid no sums on the note; and allege tender of payment to plaintiffs. Defendants further allege that checks were substituted for the note, and therefore plaintiffs are not entitled to interest or attorneys' fees. Defendants' Answer sets forth that the note was given as a part of the purchase price for certain real and personal property sold to the defendants by plaintiffs, and that defendants were induced to purchase the property by reason of false and fraudulent representations made to defendants concerning the capacity of irrigation water from three wells, the pumping equipment on the premises, and the availability of tail or waste water. Defendants also filed a counterclaim pleading fraud and alleging damages in the sum of $20,699.09. Plaintiffs' Answer to defendants' counterclaim denied any false or fraudulent representations.

The case came to trial before the court and jury on the 21st day of February, 1959. At the close of all of the testimony the court sustained plaintiffs' motion for directed verdict on plaintiffs' complaint, and submitted to the jury the question of fraud on defendants' counterclaim. The jury returned a verdict for plaintiffs and against the defendants.

The facts developed upon the trial of the issues are as follows: In August of 1955 plaintiffs and defendants entered into negotiations for the sale by plaintiffs to defendants of one-half section of land on which were 83 acres of growing cotton, and certain farm equipment and machinery for the sum of $69,699.09. The transaction was

consummated on September the 2nd, 1955, through the Surety Title and Trust Company of Florence (hereinafter referred to as Trust Company).

As a part of the purchase price defendants executed the promissory note heretofore mentioned payable on the 1st day of March, 1956. On or about March the 1st, 1956, defendants gave to plaintiffs a check postdated in the amount of $8,712.50, representing the principal and interest to that date.

Defendants learned of some controversy between the plaintiffs and two real estate brokers over commissions claimed to be due, and defendants stopped payment on this check. Later defendants gave to plaintiffs two checks, defendants' Exhibit A, one for $8,008.32 and one for $704.18, postdated March the 14th, 1956, payable to Trust Company and Marcus Vanderslice (plaintiff), which checks were not endorsed by plaintiffs until or about May 15, 1956, and were then deposited to his account on May the 15th, 1956. Sometime prior thereto defendants had stopped payment on both checks. On March the 12th plaintiff wrote the following letter (defendants' Exhibit B) to the Surety Title and Trust Company:

"March 12, 1956

"Surety Title and Trust Company
Florence, Arizona

"Gentlemen:

"I have received from you the original note dated September 2, 1955 from Warren H. Steele, Jr. and Clara May Steele to M. C. Vanderslice and Dorothy B. Vanderslice in the amount of $8,500.00.

"Mr. Steele has given me a check dated March 14, 1956 in full payment of this note, *including* interest at 5% from date of note to March 1, 1956 which would be $212.50.

"Yours very truly,

/s/M. C. Vanderslice
M. C. Vanderslice"

Sometime prior to March the 12th, 1956, plaintiffs surrendered the original note to the defendants upon receipt from the defendants of the two checks upon which payment was later stopped.

Defendants' first assignment of error is to the directed verdict in favor of the plaintiffs and against the defendants on plaintiffs' complaint for the reason that under the evidence before the court and the jury the defendants were entitled to have the jury pass upon the question as to whether the checks given by defendants to the plaintiffs operated to discharge the promissory note and substitute the checks therefor.

This assignment presents two issues. The first is whether the note from the defendants to the plaintiffs was discharged by the giving of two checks dated March 14, 1956, together with the letter from the

plaintiffs to the Trust Company showing receipt of the checks in full payment of the note. The second is whether the trial court erred in directing a verdict in favor of the plaintiffs on this issue.

■ For a check to operate as an unconditional discharge of a note there must be: (1) payment on the check; or (2) an express agreement by all the parties to accept the check as unconditional payment; or (3) a novation.

Taking these seriatim:

■ 1. The evidence is uncontradicted that no payment was made on the note and no payment was made on the checks by defendants. In fact the defendants withdrew the necessary funds and put a stop payment order on the checks at their bank and thereby made payment impossible. When a negotiable check is exchanged for a negotiable note the exchange is complete when delivered unless the check is not paid. Miller v. Marks, 46 Utah 257, 148 P. 412.

■ 2. The defendants contend that the check was received in absolute payment and they further contend that the release of the note, the letter to Trust Company from plaintiffs and the delay in presenting the check for payment is evidence of such. We stated in Empire-Arizona Copper Co. v. Shaw, 20 Ariz. 471, 181 P. 464, 4 A.L.R. 1229:

"The second statement of error, to-wit, 'The court erred in rendering said judgment because there is no evidence of any valid promise on the part of appellants to make good said check to appellee,' is set forth upon the theory that the appellee's debt, owing by appellants, was paid, satisfied and discharged by them by the issuance of a check to their creditor. Such is not the law, unless, as a fact, the creditor accepts the check as final payment." 20 Ariz. 471, 475, 181 P. 465.

The foregoing seems to be the rule recognized by courts everywhere. Little v. Mangum, 17 F.2d 44 (4th Cir. 1927); Kady v. Schutte, 72 N.D. 228, 5 N.W.2d 721; Lloyd Mortgage Co. v. Davis, 51 N.D. 336, 199 N.W. 869, 36 A.L.R. 465; Treadwell v. El Reno Mill & Elevator Co., 160 Okl. 277, 16 P.2d 62; Advance-Rumley Thresher Co., Inc., v. Hess, 85 Mont. 293, 279 P. 236; Turner v. Pugh, 195 S.W.2d 374 (Tex. Civ.App.1946), rev'd on other grounds, 145 Tex. 292, 197 S.W.2d 822, 172 A.L.R. 707; Commercial Bank of Booneville v. Varnum, 176 Mo.App. 78, 162 S.W. 1080; Morris v. Cleve, 197 N.C. 253, 148 S.E. 253; Bassett v. Merchants' Trust Co., 118 Conn. 586, 173 A. 777, 93 A.L.R. 1008. See 10 C.J.S. Bills and Notes § 443, p. 971. If the check is not paid the party may return it and sue on the original note. Grant v. Reed, 165 Kan. 27, 193 P.2d 214; Baker-Evans Grain Co. v. Ricord, 126 Kan. 107, 267 P. 14.

We hold, therefore, that a check given in exchange for a negotiable instrument is a conditional payment only unless there is an express agreement to the contrary.

■ Defendants contend that the letter from plaintiffs to the Trust Company as escrow agent is an express agreement to accept the checks as absolute payment of the note. The words in the second paragraph of the letter, quoted heretofore, "* * * in payment of the obligation" must be construed in their ordinary use. In the opinion of the Court and apparently of the trial court, such words meant no more than a mere receipt or acknowledgement of the checks and was not to be considered as an unconditional payment, and to be binding upon presentation, if the checks were dishonored. This is in accord with the rule that all payments of this character are presumed to be conditional payments, i. e. conditional upon the payment of the check when presented to the bank. National Life Ins. Co. of Vermont v. Goble, 51 Neb. 5, 70 N.W. 503; Weaver v. Nixon & Wester, 69 Ga. 699 (1882); Advance-Rumley Thresher Co., Inc. v. Hess, supra; Kalman v. Treasure County, 84 Mont. 285, 275 P. 743.

■ With respect to the delay in presenting the checks for payment, the defendants claim there were sufficient funds for payment in defendants' bank for about 18 days after the checks were written and prior to the stop payment order and withdrawal of said funds and that "If the plaintiffs did not get their money at that time it was their own fault * * *". Such contention is untenable. An unreasonable delay, omission, laches or negligence in presenting a check for payment by the payee, or to give notice of its dishonor, does not exonerate the maker of the check, except to the extent the drawer has suffered some actual loss or damage through such delay in the presentment of the check or in giving notice of its dishonor. Williams v. Braun, 14 Cal.App. 396, 112 P. 465; Deal v. Atlantic Coast Line R. Co., 225 Ala. 533, 144 So. 81, 86 A.L.R. 455; 3 Daniel, Negotiable Instruments § 1772 (7th ed. 1933); 8 Am.Jur. Bills & Notes § 753, p. 417.

■ The drawer of a check is not damaged by delay in presenting it for payment where he has no funds, insufficient funds or has withdrawn funds in the bank for its payment. In re Hore's Estate, 220 Minn. 365, 19 N.W.2d 778, 160 A.L.R. 1064; Kinyon v. Stanton, 44 Wis. 479, 28 Am.Rep. 601; Conroy v. Warren, 3 Johns.Cas., N.Y., 259, 2 Am.Dec. 156; Philadelphia L. Ins. Co. v. Hayworth, 296 F. 339 (4th Cir. 1924); Industrial Trust, Title & Sav. Co. v. Weakley, 103 Ala. 458, 15 So. 854, 49 Am.St.Rep. 45. Where the drawer has no funds at the time he draws his check or if he subsequently withdraws them, he commits a fraud upon the payee, and will not

suffer loss or damage from the holder's delay in making presentment or giving notice. First Nat. Bank of Portland v. Linn County Nat. Bank, 30 Or. 296, 47 P. 614. "To do it would enable him to work a fraud, to pocket his original money and the consideration of the check." Moody v. Mack, 43 Mo. 210 (1869).

■ 3. The defendant further contends that the checks issued by the defendants to the plaintiffs discharged the note by novation. Novation may be defined as "the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one which is thereby extinguished." To constitute a novation there must be among other elements a mutual agreement between the creditor and his debtor which is intended to extinguish the old obligation by substituting a new one therefor. Catelina Groves v. Oliver, 73 Ariz. 38, 236 P.2d 1022.

■ The evidence clearly shows the checks were given in return for the note with no new consideration given by the defendants to the plaintiffs. Nor was there any intention or express agreement shown between the parties to the note to accept the checks as a novation and extinguish the obligation represented by the note.

■ Defendants' contention that the trial court erred in directing a verdict is without merit. In an action on a negotiable instrument the direction of a verdict is determined by the same general rules which control in the direction of verdicts in other civil actions. If all the essential facts are conceded or undisputed or, according to the weight of authority, if th( weight of the evidence is such that a verdict in his favor would have to be set aside, the court may and should direct a verdict. Accordingly, if there is no issue as to the amount due on the negotiable instrument in question and the ascertainment of the amount of interest due is a mere matter of mathematical computation, the court may direct the jury as to the amount of their verdict, including the item of interest. Home Trust Co. v. Josephson, 339 Mo. 170, 95 S.W.2d 1148, 105 A.L.R. 1063; 8 Am.Jur. Bills & Notes § 1134, pp. 680–681.

■ The question of payment is for the court where material evidence is undisputed. Absent proof of payment or where the proof shows no payment, a directed verdict for plaintiff is proper. Commercial Bank of Booneville v. Varnum, supra; Commercial Credit Co. v. Maxey, 289 Ill.App. 209, 7 N.E.2d 155; American Nat. Bank of Beggs v. Demaras, 167 Okl. 57, 27 P.2d 828; Meinholtz v. Lampert, 101 S.W.2d 503 (Mo.St.Louis Ct. of Appeals 1937); 11 C.J.S. Bills & Notes § 706, p. 226.

■ In the instant case the evidence is undisputed that the defendants never paid

the note. The deposition of the defendant, Warren H. Steele, was read into the record as follows:

"Q. Have you ever paid that note? A. I made an attempt to pay it.

"Q. Have you ever paid the note? A. No.

"Q. And have you paid any interest on the note? A. No.

"Q. * * * And you haven't stopped payment on it? A. I did stop payment of it.

"Q. Oh, you stopped payment on it also? A. Yes.

"Q. * * * I see, and when did you stop payment on it? A. Oh, sometime in April.

"Q. In other words, you gave him one check and you got the note? A. That is right.

"Q. And then you stopped payment on that check, and then you gave another check payable to him and the Title Company and then you stopped payment on that check? A. That is right.

"Q. Did you tender him the note back after you stopped payment on those checks? A. No.

"Q. Why not? A. Well, the second check was a postdated check which is just the same as a promissory note, as far as I know, and he had that and I had the note, and that's what all the exchange of checks and things was for."

The determination of whether the checks constituted a discharge of the note was one of law for the court and a directed verdict was proper. Zusman v. First State Bank of Lovell, 178 Okl. 330, 63 P.2d 760; Morgan Petroleum Corp. v. Billings, 174 Okl. 162, 51 P.2d 325.

The evidence of nonpayment of defendants' obligation on the note in this case is replete and is of course a conclusive character that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict in opposition to it. As the court said in Ridara Livestock Co. v. Agricultural Products Co., 61 Ariz. 473, 150 P.2d 761:

"A judgment predicated on a directed verdict must be affirmed on appeal if any of several grounds of the motion for such verdict are good, if the result is the only one that could be reached legally. Horan v. Richfield Oil Corp., 56 Ariz. 64, 105 P.2d 514." 61 Ariz. 473, 475, 150 P.2d 762.

The defendants next assign as error the introduction of evidence as to alleged profits which they received from a subsequent sale of the property. It is the

defendants' contention that the measure of damage for fraud is the benefit of the bargain rule. Hence, when a purchaser of property relies on fraudulent representation in the purchase thereof his measure of damages is the difference between the value of the property as represented and the value of the property in its actual condition. Defendant is correct in asserting that the benefit of the bargain rule obtains in Arizona. Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161; Packard Phoenix Motor Co. v. McRuer, 41 Ariz. 450, 19 P.2d 332. However, a review of the record establishes that the testimony complained of was for the purpose of showing the actual value of the property at the time of the transaction thereby negativing the allegation of fraud.

The record discloses that counsel for the plaintiff made this statement on objection to the introduction of the evidence:

"May it please the Court, * * * evidence of what the farm sold for is certainly cogent evidence of its value as a farm. And if the benefit of the bargain rule as set out in Lutfy v. Roper is to be applied, it is the difference between what it was represented to be in and what it actually was. And we believe that as evidence of its value we may give the plaintiff's own evidence as to what his estimate was of its value, what its appraisal was and

also the admissions of the defendant as reflected by the amount for which he sold it."

The admissibility of the price for which a purchaser subsequently sold the property in order to negative an imputation of fraud must necessarily be distinguished from the admissibility of such resale price to defeat or mitigate damages for fraudulent representations. Not having decided this question in Arizona, we will go to recognized authorities and decisions from other jurisdictions for our guidance. State v. McDonald, 88 Ariz. 1, 352 P.2d 343.

The majority of the cases hold that evidence of the price that a purchaser obtained on a resale of the property is evidence of the real value of the property.

It is stated in 31 A.L.R.2d 1065 after a discussion of the "Benefit of the Bargain" rule and "Out of Pocket" rule that:

"It has therefore become the general rule that in actions for damages for fraud and deceit in the acquirement of property in a commercial transaction in which it becomes necessary to determine the actual or real value of the property at the time of the transaction, evidence of the price for which it was subsequently sold, otherwise inadmissible, may become admissible if it appears that it has a direct and proxi-

mate bearing as an indication of such value or as an aid in its determination, and that the tests of relevancy, having regard for proximity of time and similarity of circumstances and conditions, have been met."

The price which the defrauded purchaser paid for property or the price which he obtained on a resale of the property is evidence of value. 37 C.J.S. Fraud § 147(2), p. 493.

In Louis Steinbaum Real Estate Co. v. Maltz (Mo.1952), 247 S.W.2d 652, 655, 31 A.L.R.2d 1052, the Missouri Court stated:

"It is true that in an action for damages for fraud and deceit the purchaser, having elected to retain the property, may recover damages measured by the difference between the value of the property as represented and the actual value of the property at the time of sale; and it is also true that this rule enables the purchaser to recover the so-called 'benefit of his bargain' (citing cases). It follows that a resale by the purchaser, even at a price which enables him to realize an over-all profit on the transaction, does not affect the *measure* of damages, i. e., damages are not decreased because of a subsequent advantageous disposition.

"This does not mean, however, that evidence which is competent and relevant on the question of value at the time of sale is not admissible because such evidence may also disclose that the purchaser sold for a greater price than he paid."

 Evidence admissible for one purpose is not to be excluded because inadmissible for another purpose. Leigh v. Swartz, 74 Ariz. 108, 114; 245 P.2d 262, 266. The question of admission is one involving the discretion of the court and the decision of the court will not be disturbed unless it is manifestly against the weight of the evidence. State v. McDonald, supra. The price brought by the subsequent sale of the property by the defendants was relevant, material and competent as to proximity of time and similarity of circumstances and conditions to establish value at the time of the original transaction. The value of the land, the cotton base, and water rights had not so materially changed between the two sales as to defeat such evidence of value or as an aid in its determination since the resale by defendants was approximately one year after its purchase.

 While there were some discrepancies in the testimony as to values, the defendants' own evidence showed that there were no fraudulent misrepresentations as to the values of the property. By defendants' own figures it is shown that the prop-

erty was worth more than they paid. The defendants cannot be heard to complain of their own evidence. Where there are sufficient facts for the jury to consider, and where the verdict on these facts can be justified under some theory of law, we shall not disturb the judgment and verdict. Mountain States Const. Co. v. Riley, 88 Ariz. 335, 356 P.2d 648; Builders Supply Corp. v. Shipley, 86 Ariz. 153, 341 P.2d 940. The evidence is sufficient to support the jury's verdict and the judgment of the court based thereon.

Three assignments of error are advanced asserting misconduct of counsel principally in argument to the jury. It is true that the language of counsel for the plaintiffs in his argument to the jury was forceful, characterizing as he did the testimony for the defendant as perjurious. The citation to counsel's statements does not convince us, however, that it went wholly beyond the realm of impropriety and we do not believe that defendant was prejudiced thereby.

■■■ Counsel for plaintiffs petitioned this Court for an additional allowance for attorneys' fees for the defense of his clients on the appeal before this Court. The original note upon which the plaintiffs-appellees brought action provided for reasonable attorneys' fees. The trial court allowed the sum of $1,000 as attorneys' fees for the trial in the superior court.

The more recent authorities considering contracts which provide for attorneys' fees have made allowances for additional fees for the prosecution or defense of an action in the appellate courts. Cirimele v. Shinazy, 134 Cal.App.2d 50, 285 P.2d 311, 52 A.L.R. 2d 860; Wilson v. Wilson, 54 Cal.2d 264, 5 Cal.Rptr. 317, 352 P.2d 725; and see Anno., 52 A.L.R.2d 863 (1957). Accordingly, we fix the amount of appellees' attorneys' fees in this Court at the sum of $500.

It is therefore ordered that the plaintiffs be, and they are hereby awarded judgment against the defendants in the additional sum of $500.

The judgment of the court below in all other respects is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concurring.

NOTE: The Honorable RENZ L. JENNINGS being disqualified, the Honorable ROSS F. JONES, Superior Court Judge, was called to sit in his stead.